IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BALTAZAR AGUIRRE HERAS,

    Plaintiff,

vs.                                                                 Civ. No. 16-600 KG/SCY

CORRECTIONS CORPORATION OF
AMERICA, FNU GUZMAN, JOHN DOE
1, JOHN DOE 2, and JOHN DOE 3,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon "Defendants' Motion for Summary Judgment" (Motion for Summary Judgment) and "Defendants' Notice of Errata Re: Exhibits 2 and 3 to Defendants' Motion for Summary Judgment," both filed by Defendants CoreCivic, formerly Corrections Corporation of America (CCA), and G. Guzman (collectively, Defendants) on June 18, 2018. (Doc. 40 and 41). *Pro se* Plaintiff did not respond to the Motion for Summary Judgment. Having reviewed the Motion for Summary Judgment and the accompanying exhibits, the Court grants the Motion for Summary Judgment.

*A. Federal Jurisdiction*

Under Fed. R. Civ. P. 12(h)(3), the Court has a duty to raise and determine *sua sponte* whether subject matter jurisdiction exists in a particular case. *See McAlester v. United Air Lines*, 851 F.2d 1249, 1252 (10th Cir. 1988) ("The general rule is that subject matter jurisdiction may be challenged by a party or raised *sua sponte* by the court at any point in the proceeding."). In this case, Plaintiff alleges federal diversity jurisdiction in bringing his state negligence and intentional tort claims against the individual Defendants and his state respondeat superior claim

against CoreCivic. (Doc. 18) at ¶ 1. Plaintiff bases these claims on the alleged use of excessive or unreasonable force on him.

A federal court has diversity jurisdiction in suits between citizens of a state and citizens or subjects of a foreign state where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(2). The Court is satisfied that diversity of citizenship exists in this case: Plaintiff is a Mexican national, the individual Defendants are New Mexico citizens, and CCA (now CoreCivic) is a citizen of Maryland with a principal place of business in Tennessee. (Doc. 18) at ¶¶ 5, 6, 7, and 9.

With respect to the amount in controversy, "[a]lthough allegations in the complaint need not be specific or technical in nature, sufficient facts must be alleged to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor." *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1272 (10th Cir. 1998). "Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated." *Swiech v. Fred Loya Ins. Co.*, 264 F. Supp. 3d 1113, 1130 (D.N.M. 2017). Also, "[p]unitive damages may be considered in determining the requisite jurisdictional amount." *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003). Considering the multiple claims against the individual Defendants as well the claim against CoreCivic, the nature of Plaintiff's claims (alleged excessive or unreasonable force), and Plaintiff's request for punitive damages, the Court concludes that Plaintiff meets the $75,000 amount in controversy necessary to satisfy federal diversity jurisdiction. The Court, therefore, has subject matter jurisdiction over this case to decide Defendants' Motion for Summary Judgment.

*B. Undisputed Material Facts*

By failing to respond to the Motion for Summary Judgment, Plaintiff does not dispute either Defendants' Statement of Undisputed Material Facts or Defendants' accompanying exhibits supporting those facts. *See* (Doc. 40) at 2-10. Under the Local Rules, "[a]ll material facts set forth in the Memorandum [in support of a motion for summary judgment] will be deemed undisputed unless specifically controverted." D.N.M. LR-Cv 56.1(b). Moreover, Fed. R. Civ. P. 56(e)(2) provides that if a party fails to properly address an assertion of fact in a motion for summary judgment, the Court may "consider the fact undisputed for purposes of the motion" for summary judgment. In accordance with these rules, the Tenth Circuit has held that

> [b]y failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion.

*Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

The Court finds that Defendants' written declarations, incident reports, and medical report support the Statement of Undisputed Material Facts. Also, Gifford Exhibits B and C, videos of the incident at issue and of the actions following the incident, do not contradict the Statement of Undisputed Material Facts and substantially support the Statement of Undisputed Material Facts.[1] The Court accepts the Statement of Undisputed Material Facts as true, because the evidence properly supports the Statement of Undisputed Material Facts and Plaintiff failed to controvert the Statement of Undisputed Material Facts,.

The subject of this lawsuit is an incident that occurred on January 16, 2015, while Plaintiff was a post-conviction inmate at Cibola County Correctional Center, a facility owned and operated by CoreCivic. (Doc. 18) at ¶ 3; (Doc. 40-1) at 2-3, ¶¶ 2 and 3. On January 16,

---

[1] The Court acknowledges that portions of the videos do not clearly show what is occurring.

2015, Correctional Officer Delgarito informed Defendant G. Guzman, an Assistant Shift Supervisor, that he observed (1) Plaintiff "with an unknown object in his hand" when he came from recreation to his cell in the segregation unit; (2) Plaintiff "trying to sharpen the object;" and (3) Plaintiff would not give up the object. (Doc. 40-1) at 3, ¶¶ 3 and 5. Captain Dominguez, the Shift Supervisor, asked Guzman to go to Plaintiff's cell "to attempt confrontation avoidance" with Plaintiff, which included talking to Plaintiff and "attempting to convince him to voluntarily surrender the object and submit to hand restraints." *Id*. at ¶ 6. Plaintiff "repeatedly refused to do so." *Id.*

Around the same time, Assistant Warden Russell informed Special Operations and Response Team (SORT) Commander R. Gifford that Plaintiff "was sharpening an unidentified object in the corner of his cell with his back to the cell door," and that Plaintiff refused the Correctional Officer's "directives to give up the object." (Doc. 41-1) at 3, ¶ 5. Commander Gifford immediately notified SORT team members Guzman, M. Devargas, Allender, Heredia, and Wauneka to prepare to extract Plaintiff from his cell. *Id.* at ¶ 6. The SORT team was informed that Plaintiff "was sharpening an unidentified metallic object in his cell." (Doc. 41-2) at 3, ¶ 4. The purpose of the cell extraction was to remove Plaintiff from his cell to perform a strip search of Plaintiff and a search of his cell to ensure Plaintiff had no items that could be used as a weapon. (Doc. 40-1) at 4, ¶ 7.

"Each SORT team member was assigned a different task in securing [Plaintiff] to gain compliance with the minimum amount of force necessary." (Doc. 41-1) at 3-4, ¶ 6. Devargas was assigned to enter Plaintiff's cell first and to "pin [Plaintiff] with the shield, and secure his head." (Doc. 41-2) at 3, ¶ 4. Guzman was the third member of the SORT team and was assigned to secure Plaintiff's left arm. (Doc. 40-1) at 4, ¶ 11.

4

Commander Gifford notified the SORT team of the situation. He then obtained a clearance from Warden Pryor and the medical staff to use OC (pepper) spray on Plaintiff if necessary. (Doc. 41-1) at 4, ¶ 6. Medical staff confirmed Plaintiff had no documented respiratory issues that OC spray could aggravate. *Id.*

"The SORT team assembled in the segregation unit corridor at approximately 1422 hours and made staff introductions" before a handheld video camera. *Id.* at ¶ 7. Meanwhile, "mental health staff attempted confrontation avoidance techniques to get [Plaintiff] to submit to hand restraints, but he refused to do so." *Id.* at ¶ 8.

The SORT team completed video camera introductions, then lined up outside of Plaintiff's cell in preparation to enter the cell. (Doc. 40-1) at 4, ¶ 8. Assistant Shift Supervisor Marquez told Plaintiff to come to the cell door and "cuff up," i.e., submit to hand restraints, but Plaintiff refused, stating they would have to come in and get him. *Id.* at ¶ 9; (Doc. 41-1) at 4, ¶ 9. Plaintiff "had what appeared to be a shirt wrapped around his face, which is common when inmates anticipate a cell extraction and the use of OC spray." (Doc. 41-1) at 4, ¶ 9. Commander Gifford also gave Plaintiff a verbal directive to cuff up, but he refused. (Doc. 40-1), at 4, ¶ 9.

Commander Gifford then "attempted to deploy a short burst of OC spray under the cell door, but the deployment was ineffective due to a crack in the hose." (Doc. 41-1) at 5, ¶ 10. He also gave Plaintiff another verbal directive to cuff up. *Id.* at ¶ 11. Plaintiff did not obey the directive so Commander Gifford "deployed a short, one-second burst of OC spray into the cell through the food port in the cell door using the fogger without the hose." *Id.* Commander Gifford saw Plaintiff "rub his eyes and face, and gave him another verbal directive to cuff up, but he again refused." *Id.*

"After receiving a 'ready' signal from the SORT team, [Commander Gifford] opened the cell door so the SORT team could enter" Plaintiff's cell. *Id.* at ¶ 12. The first three SORT team members to enter, Devargas, Allender, and Guzman, slipped on "an unknown slippery substance" covering the floor of Plaintiff's cell, lost their footing, and fell to the floor. *Id.* at ¶ 13; (Doc. 40-1) at 4-5, ¶ 11. Plaintiff immediately jumped up, rushed at the SORT team, and "started attempting to hit any SORT team member within distance, swinging both hands downward in a hammering motion with closed fists and something" in one or both hands, and striking Devargas' helmet and arm while he was on the floor. (Doc. 40-1) at 5, ¶ 12; (Doc. 41-1) at 5, ¶ 13; (Doc. 41-2) at 3, ¶ 6. As the SORT team attempted to gain Plaintiff's compliance, Guzman gave Plaintiff "several verbal directives to stop resisting and to get on the ground," but Plaintiff refused, and "continued to fight and struggle." (Doc. 41-1) at 5, ¶ 14.

Guzman attempted to grab Plaintiff's left arm, "but [Plaintiff] had put lotion or soap or some other slippery substance on his body, as well." (Doc. 40-1) at 5, ¶ 13. In response, Plaintiff tried "to punch [Guzman] in the head and face area." *Id.* "Feeling that [he] needed to take immediate action to preserve [his] own life or another's life, [Devargas] struck [Plaintiff] with a closed fist." (Doc. 41-2) at 4, ¶ 8. Although Devargas was aiming for Plaintiff's chest, Devargas struck Plaintiff in the face as a result of Plaintiff's movements and Devargas' "own unsure footing" on the slippery cell floor. *Id.* Plaintiff "stumbled backwards, but then came towards the SORT team again, still with what appeared to be unidentified objects in his hands, attempting to stab anyone he could reach." *Id.*

The SORT team eventually got Plaintiff face down on the cell floor. (Doc. 40-1) at 5, ¶ 14. Plaintiff, however, continued to refuse to comply with orders, including Guzman's "order to drop what was in his hand," and kicked his feet; bent his legs; and tried to keep SORT team

6

members from restraining his arms and legs. *Id.* "Again, feeling [he] needed to take action to protect [his] own life and the lives of the other SORT team members, all of whom were still having trouble regaining their footing on the slippery floor," Devargas inflicted "lateral forearm strikes" to Plaintiff's back left shoulder to get Plaintiff to release the object in his hand and to allow the SORT team to apply restraints. (Doc. 41-2) at 4, ¶ 9. As Plaintiff continued to struggle, both Guzman and Commander Gifford deployed short bursts of OC spray in the direction of Plaintiff's face and torso. (Doc. 40-1) at 5, ¶ 15; (Doc. 41-1) at 6, ¶ 15.

After nearly a full minute of struggling and fighting, Plaintiff finally released the object in his hand, a sharpened pencil, and stopped struggling, allowing the SORT team to gain control and apply restraints. (Doc. 40-1) at 5, ¶ 15; (Doc. 41-1) at 5, ¶ 14; (Doc. 41-2) at 4, ¶ 10. A sharpened pencil can be dangerous depending on how one uses it, especially when used like Plaintiff was using it. (Doc. 41-1) at 6, ¶ 17.

"Because the floor was still slippery, [the SORT team] could not stand up with Plaintiff, so [they] slid him out of the cell on his stomach." (Doc. 40-1) at 6, ¶16. Once outside the cell, the SORT team carried Plaintiff to the shower to decontaminate, "i.e., to wash the OC spray off his skin and out of his hair and eyes." *Id.*; (Doc. 41-1) at 7, ¶ 19. Plaintiff showered for approximately 40 minutes. *Id.* at ¶ 17. During that time, Plaintiff did not say or do anything to suggest he was injured or had any type of "unusual reactions" to the OC spray. *Id.*; (Doc. 41-1) at 7, ¶¶ 19-20; (Doc. 41-2) at 5, at ¶ 12. After Plaintiff finished decontaminating, the SORT team escorted Plaintiff to an intake holding cell, where medical staff evaluated him. (Doc. 40-4) at 3. The medical staff found Plaintiff was uninjured, except for some reddened areas on his face, neck/shoulder area, forearms, and hands. *Id.*

Guzman attested in an affidavit that he "did not, at any time, use more force than was necessary to restrain [Plaintiff] and did not see any other member of the cell extraction team do so, either." (Doc. 40-1) at 6, ¶ 19. Devargas attested in his affidavit that he "reasonably believed the situation to be potentially life-threatening, both to [himself] and to other members of the SORT team." (Doc. 41-2) at 5, ¶ 13.

*C. The Second Amended Complaint (Doc. 18)*

Plaintiff alleges in the Second Amended Complaint that "while [he] was restrained and not resisting, Defendants Guzman and John Does 1-3 repeatedly beat [him], striking his head, body, legs and back." (Doc. 18) at ¶ 15. "Plaintiff could not see exactly which Defendant was delivering which blow." *Id.* at ¶ 16. These allegations form the basis for the three counts Plaintiff brings in his Second Amended Complaint.

In Count I, Plaintiff alleges that Guzman and the John Doe Defendants breached their duty of reasonable care and, thus, acted negligently by "repeatedly striking Plaintiff, and/or failing to intervene to prevent each other from repeatedly striking Plaintiff…." *Id.* at ¶ 21. In the alternative to Count I, Plaintiff alleges in Count II that Guzman and the John Doe Defendants committed an intentional tort by using "unreasonable, unnecessary, and excessive force, and fail[ing] to prevent each other from using such force against Plaintiff … without justification or excuse." *Id.* at ¶ 24. In Count III, Plaintiff brings a respondeat superior claim against CoreCivic for the actions by Guzman and the John Doe Defendants committed within the scope of their employment with CoreCivic.

*D. Standard*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

E. Discussion

   *1. John Doe Defendants*

As a preliminary matter, the Court addresses the issue of how to proceed with the unnamed John Doe Defendants. "Courts have generally recognized the ability of a plaintiff to use unnamed defendants so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served." *Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996). When a plaintiff provides "an adequate description to identify the persons involved," the Court should include those "Doe" defendants as named defendants in a summary judgment rather than dismiss them. *Id.*

In the Second Amended Complaint, Plaintiff described the three John Doe Defendants as corrections officers who "repeatedly beat Plaintiff, striking his head, body, legs and back" when "Plaintiff was restrained and not resisting." (Doc. 18) at ¶ 15. Plaintiff admits in his Second Amended Complaint that he "could not see exactly which Defendant was delivering which blow." *Id.* at ¶ 16. The undisputed evidence shows that Devargas hit Plaintiff in the face and that once Plaintiff was taken to the floor, face down, Devargas gave Plaintiff lateral forearm

9

strikes to his left back shoulder. It is clear from this evidence that only one unknown corrections officer, not three, struck Plaintiff and that corrections officer was Devargas. Accordingly, the Court will include Devargas as a named Defendant in analyzing the Motion for Summary Judgment.

Next, the Court determines *sua sponte* whether to dismiss Plaintiff's claims against the two remaining John Doe Defendants under Fed. R. Civ. P. 12(b)(6). A court may *sua sponte* dismiss with prejudice a complaint under Rule 12(b)(6) for failure to state a claim if "it is patently obvious 'that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quoting *McKinney v. Oklahoma, Dep't of Human Services*, 925 F.2d 363, 365 (10th Cir. 1991)). *See also Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citation omitted). Considering the undisputed facts in this case, "it is patently obvious" that only one corrections officer, Devargas, struck Plaintiff. Consequently, Plaintiff could not prevail on the facts he alleged in the Second Amended Complaint as to the other two John Doe Defendants. Furthermore, it would be futile to allow Plaintiff to amend the complaint to name two other corrections officers since it is undisputed that only Devargas struck Plaintiff. For these reasons, the Court will dismiss with prejudice Plaintiff's claims against the two remaining John Doe Defendants for failure to state a claim under Rule 12(b)(6).

*2. Count I: Negligence by Guzman and Devargas*

Plaintiff bases his negligence claim on the allegation that he was physically beaten, i.e., battered. Defendants argue that negligent battery does not exist as a matter of law. The District of Arizona recognized recently that

> more fundamentally, "[t]here is no such thing as a negligent battery or a negligent assault." 8 Am. Law of Torts § 26.1. "Any given act may be intentional or it may be negligent, but it cannot be both. Intent and negligence are regarded as mutually exclusive grounds for liability." Dan B. Dobbs, Paul T. Hayden, and Ellen M. Budlick, *The Law Of Torts* § 31 (2d ed.); *see also Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12, 21 (2002) (citing favorably The Law of Torts and distinguishing between intentional torts and negligence). Indeed,
>
> > Negligence has been held to be wholly, legally incompatible with the theory of assault and battery.... Therefore, a jury cannot find both negligence on the part of the defendant and liability for the intentional torts of assault and battery based on the same acts. Once intentional offensive conduct has been established, the actor is liable for assault and not negligence.
>
> 8 Am. Law of Torts § 26:1.

*Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039, 1046 (D. Ariz. 2017). In other words, when "a defendant admittedly acts intentionally, a plaintiff cannot proceed on a negligence theory because it is impossible to negligently commit an intentional tort," like battery. *Id.* at n. 5. "It follows that there is no such thing as a 'negligent battery.'" *Howard v. Wilson*, 62 So. 3d 955, 957 (Miss. 2011).

The undisputed evidence here shows that Devargas intentionally struck Plaintiff because of safety concerns for himself and the SORT team. Since Devargas acted intentionally, Plaintiff cannot bring a negligence claim against Devargas premised on an alleged battery. Moreover, the undisputed facts do not show that Guzman struck Plaintiff while he was "restrained and not resisting." *See* (Doc. 18) at ¶ 15. Accordingly, a reasonable jury, even viewing the evidence in the light most favorable to Plaintiff, could not find that Guzman "beat" Plaintiff, whether

11

negligently or intentionally. Guzman and Devargas, therefore, are entitled to summary judgment on Count I as a matter of law as to both the "negligent battery" claims and the associated claim of failure to prevent "negligent battery."

### 3. Count II: Intentional Torts by Guzman and Devargas

The Court construes Count II to allege a claim for the intentional tort of battery and a claim for intentional "failure to prevent each other from" battering Plaintiff. *See* (Doc. 18) at ¶ 24; *Spurlock v. Townes*, 2016-NMSC-014, ¶ 15, 368 P.3d 1213, (referring to battery as intentional tort).

#### a. Battery of Plaintiff

In New Mexico, "[a] tortfeasor is liable for battery if: '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results.'" *Pena v. Greffet*, 108 F. Supp. 3d 1030, 1048 (D.N.M. 2015) (citations omitted). In the corrections context, this Court has held that, in New Mexico, a corrections officer is privileged to use force against an inmate to maintain custody of the inmate when the corrections officer "reasonably believes" that force is necessary. *Id.* at 1062 (citation omitted). "The term 'reasonably believes to be necessary' means that [the corrections officer] must both (i) subjectively, honestly believe that his force was limited to that which is necessary; and (ii) be objectively reasonable in that belief." *Id.* This analysis is consistent with NMSA 1978, § 33-2-30 (1998 Repl. Pamp.), which states that corrections officers have a duty to enforce the obedience of inmates "by the use of such weapons or other aid as maybe effectual" so long as the corrections officers do not use "greater force than the emergency of the case demands."

Guzman attested in his affidavit that he believed he "did not, at any time, use any more force than was necessary to restrain" Plaintiff. (Doc. 40-1) at 7, ¶ 19. Devargas attested in his affidavit that he "reasonably believed the situation to be potentially life-threatening" to himself and others. (Doc. 41-2) at 5, ¶ 13. No reasonable jury viewing these uncontested statements in the light most favorable to Plaintiff could find that either Guzman or Devargas subjectively believed that his level of physical force exceeded what was necessary. Next, no reasonable jury viewing all the undisputed evidence in the light most favorable to Plaintiff could find that the level of force used by Guzman or Devargas was objectively unreasonable under the circumstances. This is especially true when one considers that Plaintiff repeatedly refused to obey lawful commands to produce the unknown object in his hand, made his cell floor and arms slippery to deter a cell extraction, struggled and fought with SORT team members, and directed stabbing motions with an unidentified object in his hand toward SORT team members. Guzman and Devargas were privileged to use the force they did on Plaintiff and could not, as a matter of law, be liable for battery. As a result, Guzman and Devargas are entitled to summary judgment on the battery claims.

### b. Allowing Others to Batter Plaintiff

Plaintiffs also claims that Guzman and Devargas committed an intentional tort when they intentionally failed to prevent each other or others from battering Plaintiff. Defendants correctly note that "New Mexico has not recognized a state law tort for failure to prevent excessive force by correctional officers."[2] (Doc. 40) at 15 n. 5. Moreover, as discussed above, Guzman and Devargas were privileged to use the force that they did on Plaintiff. Guzman, Devargas, or others cannot be held liable for intentionally failing to prevent a privileged use of force because

---

[2] Independent research by the Court has failed to uncover such a state law tort.

the underlying battery was justified.  Guzman and Devargas are entitled to summary judgment as a matter of law on that claim as well.

    *4. Count III:  Respondeat Superior*

"Under basic respondeat superior principles, an employer is liable for an employee's torts committed within the scope of his or her employment." *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 29, 135 N.M. 539, *as corrected* (June 9, 2004).  Respondeat superior, thus, relies on an employee's commission of a tort.  Put another way, "[a] claim of respondeat superior requires a surviving underlying claim against an employee." *Johnson v. City of Rockford*, 2018 WL 2332181, at *34 (N.D. Ill.); *see also Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996) ("[T]here being no surviving underlying theory of liability, the respondeat superior claims were also properly dismissed.").  The Court finds that the underlying theories of liability are subject to summary judgment or dismissal.  Therefore, the Count III claim of respondeat superior fails as a matter of law and so summary judgment will be granted on that count.

    IT IS ORDERED that

    1.  Defendants' Motion for Summary Judgment (Doc. 40) is granted;

    2.  summary judgment will be entered in favor of Guzman and Devargas on Count I, which will be dismissed with prejudice;

    3.  summary judgment will be entered in favor of Guzman and Devargas on Count II, which will be dismissed with prejudice;

    4.  Counts I and II will be dismissed with prejudice as to the remaining two John Doe Defendants; and

5. summary judgment will be entered in favor of CoreCivic on Count III, which will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE